# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN WILLIAMS | CASE NO. 1:09-cv-00118-OWW-SMS PC |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF ACTION FOR FAILURE TO STATE A CLAIM |
| W. J. SULLIVAN, et al., | |
| Defendants. | (Doc. 19) |

### Screening Order

Plaintiff Steven Williams is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983 and state law. Plaintiff filed his original complaint on January 20, 2009 (doc. 1). On June 6, 2009, this court dismissed plaintiff's complaint for failure to state a claim and granted plaintiff leave to amend (doc. 8). On July 21, 2009, plaintiff filed a first amended complaint (doc. 11). Thereafter, on September 21, 2009, plaintiff filed a second amended complaint, which he also entitled "first amended complaint" (doc. 19).[1] To avoid confusion, the court has re-designated document 19 as plaintiff's second amended complaint. This screening order addresses the second amended complaint.

**Summary of Complaint.** Plaintiff, an inmate at High Desert State Prison, asserts three claims arising from his tenure at Tehachapi State Prison ("Tehachapi"): (1) violation of due

---

[1] Plaintiff may amend his complaint once as a matter of right before service of a responsive pleading by defendants. Fed.R.Civ.P. 15(a). An amended complaint supercedes prior complaints. *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997), *aff'd*, 525 U.S. 299 (1999); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

process in the classification of plaintiff as a member of the Kumi, 415 gang; (2) denial of plaintiff's right of access to courts; and (3) retaliation against plaintiff's litigation activities by confiscation of plaintiff's legal materials, assignment to a disciplinary cell, and eventually, transfer to a prison outside the district in which plaintiff's cases were pending.  Only the first claim was asserted in plaintiff's original complaint.  The caption names as defendants S. Cole, D. Chapman, and M. Carrasco.

**Screening Requirement.**  The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to § 1983 actions.  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002).  Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a).  "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Swierkiewicz*, 534 U.S. at 512.  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Plaintiff must set forth sufficient factual matter accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949, *quoting Twombly*, 550 U.S. at 555.  While factual allegations are accepted as true, legal conclusions are not.  *Iqbal*, 129 S.Ct. at 1949.

Although accepted as true, "[f]actual allegations must be [sufficient] to raise a right to relief

2

above the speculative level." *Twombly*, 550 U.S. at 555 (*citations omitted*). A plaintiff must set forth "the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* at 555-56 (*internal quotation marks and citations omitted*).

**Omission of facts and circumstances.** Plaintiff's second amended complaint barely acknowledges the underlying facts, developed in detail in the original complaint and the many exhibits attached to and incorporated in the complaint. These omissions prevent a complete understanding of the circumstances of plaintiff's action.

In its screening order regarding the original complaint, this court observed:

> Plaintiff's complaint does not seek correction of the erroneous file information. The gang information to which he objects was removed from his file in the second level of the prison grievance process, pending the outcome of an Institutional Gang Investigation. Plaintiff seeks to punish the prison officials named as defendants and recover monetary damages from them.

Later, the court added:

> Although Plaintiff succeeded in having the allegedly erroneous gang information removed from his prison file, he insists that he has been denied due process. Emphasizing that he intended his grievance to be treated as a staff complaint, Plaintiff contends that, by simply removing the gang information and moniker from his file, he was denied due process since his grievance requested the following action:
>> That this 602 be processed as a staff complaint, and that this be investigated thoroughly, and every code section mentioned, followed to the letter of the law, and thus, the information removed immediately from my file and all that related to such an invidious misconception forthwith.

Complaint at 2.

> Prison officials' failure to conduct the grievance procedure according to Plaintiff's demands does not constitute a constitutional violation cognizable under 42 U.S.C. § 1983.

The omitted factual material raises questions regarding the true nature of plaintiff's action. This court's having frustrated plaintiff's attempt to penalize officials who refused to play the game by his rules, plaintiff appears to have attempted to recast this action in a form more likely to result in the judgment that will vindicate him and undermine prison officials. Plaintiff's total abandonment of the underlying facts may indicate a malicious or frivolous motive.

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court

shall dismiss the case at any time if the court determines that the action or appeal is frivolous or malicious." 28 U.S.C. §1915 (e)(2)(B)(I); *see also* 28 U.S.C. § 1915 (b)(1); 42 U.S.C. § 1997e (c)(1). "[A] complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact . . . . . [The] term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). *See also Martin v. Sias*, 88 F.3d 774, 775 (9th Cir. 1996); *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *Lopez v. Dept. Health Services*, 939 F.2d 881, 882 (9th Cir. 1991) (per curiam). The determination of whether a complaint is frivolous under § 1915(a) empowers the court not only to dismiss merit less legal claims but also to "pierce the veil of the complaint's factual allegations," *Neitzke*, 490 U.S. at 327. Doing so in this case is best accomplished by reference to the detailed factual allegations of the original complaint.

**Factual background.** Plaintiff's original complaint set forth a detailed background of the facts and circumstances underlying his claims. On February 19, 2008, plaintiff was released to the general prison population following a SHU term (doc. 1, ex. F). As a result of plaintiff's change in status, a Unit Classification Committee ("UCC") convened on February 27, 2008, to review plaintiff's prison classification (doc. 1, ex. H).

On May 2, 2008, plaintiff received a copy of the Form 128-G(Classification Chrono), which reported, "CDC 812 reflects noted enemy(s) and street gang non-validated KUMI, 415 with the moniker of -Country-." (doc. 1, ex. F and H). Plaintiff filed an administrative appeal (CDC 602) on May 9, 2008, claiming that inclusion of the gang information violated DOM §§ 13030.10, 13030.13.2, and 13030.14[2] (doc. 1, ex. B). The appeal demanded "that this be processed as a staff complaint" (doc. 1, ex. B).

Plaintiff's appeal was denied at both the informal level and the first formal level of appeal, pending the results of the institutional gang investigator's ("IGI") inquiry into plaintiff's possible gang association (doc. 1, ex. B and G). Both responses specified that the gang information set

---

[2] "DOM" refers to the CDCR Operations Manual, which sets forth rules applicable to all CDCR correctional institutions.

forth on the Form 128-G could be reviewed upon receipt of the investigation's outcome (doc. 1, ex. B and G). Ultimately, the gang information and moniker were removed from the Form 128-G at the second level of appeal, pending the outcome of the IGI investigation (doc. 1, ex. H and J). Plaintiff nonetheless continued his appeal to the third (director's) level, where Chief Grannis refused to review the matter, noting that plaintiff's appeal had been granted, leaving no unresolved issues for review (doc. 1, ex. I).

References to the KUMI, 415 gang membership and "Country" moniker were omitted from two SHU reviews dated October 30, 2008, and November 26, 2008, although a new moniker, "Silverback," was included (doc. 1, ex. K and L). Plaintiff refused to attend either review (doc. 1, ex. K and L). Nothing in the record indicates that plaintiff appealed inclusion of the "Silverback" moniker.

**Due Process Claim.** Plaintiff contends that the UCC violated his right to due process when it erroneously classified him as a gang member without offering him notice and an opportunity to be heard. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). To state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Plaintiff contends that defendants Cole and Chapman, as members of the UCC conducting plaintiff's classification review after he was released from the SHU,[3] violated his due process rights by failing to disclose information supporting the KUMI, 415 gang affiliation reported on Form 812 and referenced in the Form 128-G summarizing the classification review.

The UCC made no findings regarding plaintiff's gang membership or moniker. The purpose of its February 2008 hearing was to evaluate plaintiff's prison classification in light of his recent release from the SHU. The Due Process Clause itself does not confer on inmates a liberty

---

[3] Plaintiff does not name as defendants the other members of the committee: D. Liles, Dr. B. Stallcup, D. Thompson, and Lt. Lara. Liles was named as a defendant in the original complaint but not in the second amended complaint. The second amended complaint does not explain why only Cole and Chapman are named as defendants for their roles in the UCC.

5

1  interest in a particular classification status.  *See* <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n. 9 (1976).
2  This means that a prisoner has no federal constitutional entitlement to a hearing before his
3  classification may be changed.  *Ibid.*

4  Plaintiff does not object to his classification, however.  His objection is Form 128-G's
5  inclusion of the language: "CDC 812 reflects noted enemy(s) and street gang non-validated
6  KUMI, 415 with the moniker of -Country-."  Understanding both the classification process and the
7  gang validation process is essential to understanding why plaintiff cannot assert a cognizable due
8  process claim against Cole and Chapman because of the UCC's reference to the Form 812 in its
9  Form 128-G.

10  Form 128-G's purpose is documenting the classification hearing.  DOM §62010.9.1.  The
11  documentation must include the action taken, the date of the action, the specific reasons for the
12  action, the information upon which the decision was based, the names of the participating staff, the
13  name of the committee chairperson, and the signature of the person recording the action.  DOM
14  §62010.9.1.  A classification committee must review the inmate's central file and confidential
15  materials folder each time they consider an inmate's case.  DOM § 61020.10.  Accordingly, UCC
16  was required to report the existence of a Form 812 as information upon which its decision was
17  based ("case factors").  Reciting the existence of the Form 812 does not mean that the UCC
18  determined plaintiff's non-validated gang association, that it needed to disclose details supporting
19  the Form 812's contents to plaintiff, or that it was required to conduct a hearing regarding the Form
20  812.

21  A prison gang is "any gang which originated and has its roots within the CDCR or any
22  other custodial system."  DOM § 52070.16.1.  Seven entities are designated prison gangs; KUMI
23  415 is not among them.  DOM § 52070.17.2.  A disruptive group is "any gang, other than a prison
24  gang."  DOM § 52070.16.2.  "Disruptive groups include, but are not limited to: precursor gangs
25  that may become prison gangs, street gangs, revolutionary groups, motorcycle gangs, [and] terrorist
26  groups/affiliates."  DOM § 52070.17.4.  KUMI, 415 has been identified as a disruptive group.  Bill
27  Lockyear, Attorney General, "Organized Crime in California, Annual Report to the California
28  Legislature" at 14 (California Department of Justice, 2004).  Identifying affiliates of prison gangs

6

and disruptive groups in California prisons is the responsibility of institutional gang investigators (IGI).  DOM § 52070.18.[4]

Forms 812 record information regarding an inmate or parolee that may be critical inside or outside a correctional institution.  DOM § 61020.3.  The form is intended to alert staff to security concerns relating to an inmate and critical to his safe placement.  *Id.*  A Form 812 is not confidential.  DOM § 61020.5.  If a gang investigator or a reception center staff member has reason to believe that an inmate is a gang affiliate or has had a change in gang status, he or she must complete either CDC Form 812-A, Notice of Critical Case Information–Prison Gang Identification, or CDC Form 812-B, Notice of Critical Case Information–Disruptive Group Identification.  Cal. Code Regs tit. 15, § 52070.18.1; DOM § 61020.3.1.  (Reception center personnel may have reason to believe that an inmate is gang affiliated based on numerous factors, such as self reporting, body art, written materials or photographs identifying the inmate as a gang member, among other things.)  In addition, prison counseling staff must update Forms 812 if they become aware of potentially critical information.  DOM § 61020.3.2.

A completed Form 812 documents the affiliation, category of involvement, and the original, independent source items supporting the conclusion and included in the inmate's cental file.  DOM § 52070.18.1.  An IGI, investigative lieutenant, or other designated staff must verify all gang involvement information.  DOM § 61020.5.  The completed form is retained in the inmate's central file, and the inmate is given a copy.  DOM § 52070.18.1.  Thus, if plaintiff never received a copy of the CDC 812 referenced in the UCC's chrono, the regulations do not hold the UCC liable. The gang investigator or other individual completing the Form 812 was responsible for providing a copy to plaintiff.[5]

A Form 812 must not include references to confidential material nor be filed in the inmate's confidential folder.  DOM § 61020.5.  Accordingly, confidential information must be documented

---

[4] Specifying an inmate's gang moniker appears to be incidental to specifying an inmate's gang affiliation. The court was unable to identify any regulation specifically addressing gang monikers.

[5] Because the Form 812 reports that plaintiff's gang membership was non-validated and the decisions in plaintiff's administrative appeals refer to a pending investigation, the investigation may not yet have reached the point at which providing documentation to plaintiff was appropriate or required.

7

elsewhere in the inmate's file, typically on a Form 128-B. DOM §61020.3; DOM § 61020.5. A inmate may be advised that confidential material exists, but the confidential material itself may not be disclosed to him. DOM § 61020.5. Confidential material includes (1) information which, if known to the inmate, or others would endanger the safety of any person; (2) information which would jeopardize the security of the institution; (3) specific medical or psychological information which would be medically/ psychologically detrimental if known to the inmate; (4) information provided and classified confidential by another government agency; and (5) information provided by an inmate, documented in a debriefing or other report, if the inmate has requested confidentiality and the gang coordinator/investigator or other designated staff has determined that security or safety is best served through confidentiality. DOM § 61020.8. No decision to validate an inmate as a gang member may be based on confidential information unless the confidential information has been documented and corroborated as reliable. DOM § 61020.9.1.

The gang investigator must also document the inmate's gang affiliation, category of involvement, and source items of information in narrative form on a CDC Form 128-B. DOM § 52070.18.2. The investigator also completes a Form 128-B if he found insufficient evidence to support a finding of gang affiliation. *Id.* The completed form is retained in the inmate's central file. *Id.* The gang investigator must give the inmate a copy of the Form 128-B and all non-confidential documents supporting the validation. *Id.* Confidential information is disclosed to the inmate on Form 1030. *Id.*

Plaintiff does not state a cognizable due process claim against Cole and Chapman. As members of the UCC, Chapman and Cole did nothing more than follow the requirement that they fully review all relevant factors, including plaintiff's central file and the Form 812 within it, and disclose all reviewed materials on the Form 128-G documenting their actions. To the extent that plaintiff disputes the report that he is affiliated with a disruptive group or gang, he must address that matter with the IGI, not the UCC.

**Plaintiff's claims for retaliation and court access (counts two and three).** For the first time in his second amended appeal, plaintiff asserts claims for retaliation and denial of access to

the courts.[6]  Both claims relate to occurrences after plaintiff filed the original complaint in this action.

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion must occur before the plaintiff files his or her lawsuit. *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). The section 1997e(a) exhaustion requirement applies to all prisoner suits relating to prison life. *Porter v. Nussle*, 435 U.S. 516, 532 (2002). "All 'available' remedies must now be exhausted; those remedies need not meet federal standards, not must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524. Prisoners must complete the prison's administrative process, regardless of the relief sought by the prisoner and regardless of the relief offered by the process, as long as the administrative process can provide some sort of relief on the complaint stated. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

In light of § 1997e(a), plaintiff may not add new and unrelated claims that arose after this suit was filed. In a "conflict between Federal Rule of Civil Procedure 15 and the PLRA, the rule would have to yield to the later-enacted statute to the extent of the conflict." *Harris v. Garner*, 216 F.3d 970, 982 (11th Cir. 2000). Rule 15 "does not and cannot overrule a substantive requirement or restriction contained in a statute (especially a subsequently enacted one)." *Id.* at 983. *See also Cox v. Mayer*, 332 F.3d 422, 428 (6th Cir. 2003). Allowing plaintiff to pursue his second and third claims, first added in his amended complaint, would allow plaintiff to thwart the mandate of § 1997e(a), which requires him to exhaust his claims prior to filing suit and not during the pendency of the suit. *McKinney*, 311 F.3d at 1199-1201.

**Defendant Carrasco.** Although M. Carrasco is listed as a defendant in the caption, he is not mentioned anywhere else in the second amended complaint. Because plaintiff raises no claims

---

[6] Plaintiff initially sought to raise these claims in a motion for a protective order filed August 27, 2009, in which plaintiff sought to preclude High Desert State Prison and Tehachapi State Prison from interfering with his ongoing litigation(doc. 14). This court denied plaintiff's motion on September 1, 2009 (doc. 15). Plaintiff filed his second amended complaint thereafter (docs. 18 and 19).

against Carrasco, he is properly dismissed from this action as a matter of law.

**Findings and Recommendation**

Plaintiff's second amended complaint fails to state a claim upon which relief may be granted. Because amending this § 1983 complaint will not cure the deficiency, the court hereby recommends that this action be dismissed, with prejudice, for failure to state a claim.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that, by failing to file objections within the specified time, he may waive the right to appeal the District Court's order. Martinez v.Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  October 28, 2009              /s/ Sandra M. Snyder
                                   UNITED STATES MAGISTRATE JUDGE